UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BRIAN J. CALLAGHAN, *et al.*,<br><br>                    Plaintiffs,<br>         v.<br>GENERAL STAR INDEMNITY<br>COMPANY,<br><br>                    Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:25-cv-387 (KMW-MJS)<br><br><br>**OPINION** |

**Fredric Leigh Shenkman, Esq.**
COOPER LEVENSON, PA
1125 Atlantic Avenue
3rd Floor
Atlantic City, NJ 08401-1125

*Counsel for Plaintiffs Brian J. Callaghan and Callaghan, Thompson & Thompson, P.A.*

**Kenneth J. Cesta, Esq.**
CARTON FIELDS, P.A.
180 Park Avenue
Suite 106
Florham Park NJ, 0793

*Counsel for Defendant General Star Indemnity Company*

**WILLIAMS, District Judge:**

## I.     INTRODUCTION

Plaintiffs Brain J. Callaghan, Esq. ("Callaghan"), and Callaghan, Thompson & Thompson, P.A. (collectively "Plaintiffs") bring this action against Defendant General Star Indemnity Company ("GenStar") seeking a declaratory judgment requiring Defendant to defend Plaintiffs in ongoing litigation pursuant to a Professional Liability Insurance Policy.[1] Plaintiffs allege breach of contract as well as a breach of the covenant of good faith and fair dealing.

Discovery is complete and the parties cross move for summary judgment under Federal

---

[1] The Court has subject matter jurisdiction pursuant to diversity jurisdiction. Complete diversity exists between the parties. Both Plaintiffs are citizens of New Jersey and Defendant is a citizen of Delaware and Connecticut.

Rule of Civil Procedure 56.[2] The Court has considered the parties' written submissions, finds oral argument unnecessary, and decides the motion on the papers. For the reasons set forth below, Plaintiffs' Motion (ECF No. 18) is **DENIED** and GenStar's Motion (ECF No. 19) is **GRANTED**.

## II.    BACKGROUND

### A.    The Insurance Policy

In 2021, GenStar issued a Lawyers Professional Liability Insurance Policy ("Policy") to Plaintiff Callaghan Thompson & Thompson, P.A. that was effective from July 17, 2021, through July 17, 2022.[3] (ECF No.19-4 at p. 2).[4] The Policy, which included a retroactive date of January 1, 1980, provided coverage on a "claims-made and reported basis." (*Id*. at p. 2, 4).

The Policy provided coverage for both legal defense and indemnification for professional services rendered by Plaintiffs. (*Id*. at p. 6). The Policy defined the scope of coverage regarding "Damages" and "Defense" in separate provisions. (*Id*). Under the "Damages" section, GenStar was obligated to:

> [P]ay on behalf of the **Insured** all sums in excess of the Deductible which the **Insured** becomes legally obligated to pay as **Damages** for **Claims** first made against the **Insured** during the **Policy Period** and first reported to the Company in writing as soon as practicable during the **Policy Period**.

(*Id*). (bold in original).[5]

The Policy only covered Wrongful Acts that fell within the Retroactive Date if "at the inception of the Policy no **Insured** had knowledge of any fact, circumstance, situation, or **Wrongful Act** that may reasonably be expected to give rise to a **Claim** against an **Insured**." (*Id*).

---

[2] Plaintiffs moved for Summary Judgment (ECF No. 18), Defendant opposed (ECF No. 29), to which Plaintiffs replied (ECF No. 33). Defendant moved for Summary Judgment (ECF No. 19), Plaintiffs opposed (ECF No. 32), to which Defendant replied (ECF No. 34).

[3] Pursuant to its definition of "Insured", the Policy also provides coverage for Plaintiff Callaghan.

[4] Plaintiffs' Exhibit A - Lawyer's Professional Liability Insurance Policy (ECF No. 18-1 at p. 21).

[5] In the Policy and throughout the Court's Opinion, all bolded words are defined in Section VII of the Policy.

Under the "Defense" section, GenStar had "the right and duty to defend any **Claim** against the **Insured** seeking **Damages** to which the insurance applies even if any of the allegations of the **Claim** are groundless, false or fraudulent." (*Id*). However, the Policy explicitly stated that GenStar "shall have no duty to defend the **Insured** against any **Claim** seeking **Damages** to which this Insurance does not apply." (*Id*).

The Policy defined "Claim" as a "written demand for monetary damages, including the service of **Suit** or institution of arbitration proceedings, by reason of a **Wrongful Act**." (ECF No. 19-4 at p. 11). "Suit" was defined as "a civil adjudicatory proceeding in a court of law in the United States of America, its territories, possessions, Puerto Rico or Canada." (*Id*. at p. 12). A "Wrongful Act" was defined as "any actual or alleged act, error omission, or **Personal Injury** arising out of **Professional Services** rendered by an **Insured** for others." (*Id*). Under the Policy, "Professional Services" included legal services rendered by Plaintiffs in their capacity as lawyers, including services rendered "in a fiduciary capacity, or trustee, if such services are usual and customary to the practice of law and are in the rendering of professional legal services to others in an attorney/client relationship." (*Id*).

The Policy defined "Damages" as the "monetary portion of any judgment, award or settlement" but "provided always" that that Damages "shall not include…[t]he amount of funds, money, securities, or property that an **Insured** transferred or failed to transfer as a result of false, fraudulent or unauthorized instructions." (*Id*. at p. 11-12).

Further, the Policy included explicit exclusions that relieved GenStar of any duty to indemnify or defend Plaintiffs under certain circumstances. (*Id*. at p. 8-10). One such exclusion provided that GenStar was not obligated to "pay **Damages**…or to provide a defense in connection with any **Claim**…based upon or arising out of…any improper transfer, payment or delivery of

3

funds, money, securities or property caused or induced by false, fraudulent or unauthorized instructions." (*Id*. at p. 9).

###    B.    Keating & Associates' Demand Letter and Underlying Action

In the underlying action that is at issue ("Underlying Action"), Keating and Associates, LLC ("K&A") alleged that it retained Plaintiffs to represent it in connection with the potential purchase of the Revel Casino. (ECF No. 1-2 at ¶ 5).[6] Thereafter, K&A deposited $843,999.00 into a trust account ("Trust"), funds which were to be used exclusively for the purchase of Revel Casino, with Jeff Keating being the only authorized K&A signatory. (*Id*. at ¶ 6-8). The Underlying Complaint further alleged that, without K&A's knowledge or authorization, and at the direction of Carl Frederic Sealey ("Sealey), Plaintiffs disbursed approximately $836,839.81 of the Trust funds for purposes unrelated to the casino transaction, including payment of personal expenses for Sealey's benefit. (*See Id*. at ¶¶ 9, 11, 14-15). The Underlying Complaint asserts that Plaintiffs did not notify K&A after they disbursed the unauthorized funds. (*Id*. at ¶¶ 12-13).

On January 14, 2022, K&A issued a demand letter ("Demand Letter") to Callaghan. (ECF No. 19-5 at p. 2).[7] The Demand Letter alleged that Plaintiffs had committed malpractice by disbursing unauthorized Trust funds under Sealey's direction. (*Id*). The Demand Letter further alleged that Plaintiffs did not notify K&A of the unauthorized distributions and that Callaghan's handwritten Trust Account was illegible. (*Id*. at p. 2-3). Additionally, the Demand Letter sought the "return of all the monies that were deposited in Trust" and advised that a Malpractice Complaint was being prepared against Plaintiffs. (*Id*. at p. 3). The Demand Letter included a transcript of a deposition Callaghan had given in connection with a prior lawsuit filed against K&A

---

[6] Defendant's Notice of Removal, Exhibit 2, Keating and Associates LLC v. Brian J. Callaghan, Esq. *et al.* Underlying Complaint (the "Underlying Complaint") (ECF No. 1-2 at ¶ 5).
[7] Defendant Exhibit 2, The Keating Demand Letter (ECF No. 19-5 at p. 2).

wherein Plaintiff Callaghan was questioned about the allegedly unauthorized distributions that were the subject of the Demand Letter. (ECF No. 19-2 at ¶¶ 18-19).[8]

On February 24, 2022, Plaintiffs advised GenStar of the Demand Letter and potential Claim. (*Id*. at ¶ 21). GenStar responded to Plaintiffs regarding the Demand Letter on March 21, 2022, advising that there appeared to be potential coverage issues but that it would proceed with defending Plaintiffs under a reservation of rights pending investigation into the Policy coverage. (*See* ECF No. 19-9).[9] On March 17, 2023, GenStar issued a letter to Plaintiffs advising that there was no coverage under the Policy for the K&A Demand Letter Claim. (ECF No. 19-10).

On or about June 25, 2024, K&A filed the Underlying Action against Plaintiffs in the Superior Court of New Jersey, Monmouth County. (ECF No. 19-2 at ¶ 24. The Underlying Action asserted claims for legal malpractice, breach of fiduciary duty, and common law fraud. (*Id*. at p. 1, 5-6). The Underlying Complaint alleged that Plaintiffs' conduct constituted negligence and breach of the professional duties owed to K&A, and that such conduct directly and proximately caused K&A to suffer damages. (*See Id*).

The Underlying Action sought monetary damages in the amount of $836,839.81, representing the funds allegedly disbursed from the Trust without authorization, together with "all lawful interest, attorney's fees, and costs of suit." (*Id*. at p. 5-7).

Plaintiffs issued a letter to GenStar on July 24, 2024, advising of the Underlying Action and requesting that GenStar provide a defense and indemnification under the Policy. (ECF No. 19-2 at ¶ 26). On September 9, 2024, GenStar issued a Coverage Declination letter advising that GenStar would not provide a defense and indemnification as the Underlying Action was not covered under the Policy. (*Id*. at ¶ 27).

---

[8] Defendant General Start Indemnity's Statement of Material Facts (Def.'s SUMF) (ECF No. 19-2 at ¶¶ 18-19).
[9] Defendant Exhibit 6, GenStar Reservation of Rights Letter (ECF N. 19-9).

On December 10, 2024, Plaintiffs filed a Complaint against GenStar in the Superior Court of New Jersey in Atlantic County. (ECF No. 1-1 at p. 8).[10] GenStar was served with the Complaint on December 17, 2024, and subsequently, timely removed the case to this Court pursuant to diversity jurisdiction on January 13, 2025. (ECF No. 1 at ¶ 2).

### III.   STANDARD OF REVIEW

**Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact.  *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  *Anderson*, 477 U.S. at

---

[10] Defendant's Notice of Removal, Exhibit 1, Civil Case Information Statement (ECF No. 1-1 at p. 8).

6

256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.    DISCUSSION

The parties have filed cross-motions for summary judgment, each seeking declaratory relief. Plaintiffs ask the Court to declare that GenStar owes a duty to defend them in the Underlying Action and to reimburse their defense costs to date. Defendant seeks a declaration that the Underlying Action is not covered under the Policy and that it has no duty to defend or indemnify Plaintiffs.

GenStar argues that the Underlying Action is not covered under the Policy for three reasons. First, it argues that the relief sought in the Underlying Action does not constitute covered "Damages" under the Policy. (ECF No. 19-1 at 1). [11] Second, it maintains that the claims fall within an express Policy exclusion. (*Id*). Third, GenStar asserts that Plaintiffs had prior knowledge of the acts giving rise to the Underlying Action before the inception of the Policy, thereby precluding coverage. (*Id*).

Plaintiffs contend that GenStar owes a duty to defend because the Policy insures "Claims," which they argue are not confined to the definition of "Damages." (ECF No. 18-3 at 15–21).[12] They further maintain that no Policy exclusion applies and that GenStar applied the wrong standard

---

[11] Memorandum of Law in Support of General Star Indemnity Company's Motion for Summary Judgment (ECF No. 19-1 at p. 1).
[12] Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 18-3 at p. 16).

in denying coverage based on prior knowledge. (*Id*. at 2).

### A. Coverage for "Damages" in the Underlying Action

The first issue is whether the relief sought in the Underlying Action constitutes covered "Damages" under the Policy. GenStar contends that the Underlying Complaint seeks recovery only of funds expressly excluded from the Policy's definition of "Damages," and that, as a result, no indemnity obligation could arise even if Plaintiffs were found liable. Because the duty to defend depends on the potential for covered damages, GenStar argues that it likewise owes no duty to defend.

Plaintiffs, by contrast, maintain that coverage is triggered by the existence of a "Claim," and that the Policy's definition of "Damages" does not limit the duty to defend. They further contend that the Underlying Complaint's request for interest, attorney's fees, and costs constitutes potentially covered relief, notwithstanding the exclusion of the transferred funds themselves.

In New Jersey, "a definitive conclusion that a policy by its terms affords no coverage, and therefore that there is no duty of indemnification, also means that there is no duty to defend." *Flomerfelt v. Cardiello*, 997 A.2d 991, 998 (2010). However, "coverage questions may not have clear answers in advance of discovery or trial. As a result, courts are often required to evaluate whether the insurer owes its insured a duty to defend in advance of a conclusive decision about coverage." *Id*. When courts are called upon to determine if an insurer has a duty to defend, the court must "compar[e] the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (1992). In conducting that comparison, the court must determine "whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment." *Polarome Int'l, Inc. v. Greenwich Ins. Co.*, 961 A.2d 29, 47 (App. Div. 2008).

For sure, the duty to defend is broader than the duty to indemnify. *Id.* Any doubts regarding the insurer's potential indemnification obligation must be resolved in favor of the insured, thereby triggering the duty to defend. *Id.* However, an insurer has neither a duty to defend nor a duty to indemnify claims that fall outside the policy's coverage. *Id.*

Accordingly, GenStar's duty to defend is triggered only if the allegations in the Underlying Action, when compared to the Policy, present a theory of liability that could result in an award of covered damages. *Hartford Ins. Grp. v. Marson Const. Corp.*, 452 A.2d 473, 474 (App. Div. 1982). Conversely, if no theory alleged could result in a judgment for damages to which the Policy applies, GenStar owes neither a duty to defend nor a duty to indemnify.

Therefore, the Court turns to the Policy's insuring agreement and definitions to determine whether the relief sought in the Underlying Action constitutes covered "Damages."

Section I of the Policy established the scope of coverage. (ECF No. 19-4 at p. 6). Section I(A) provided that GenStar shall pay "all sums in excess of the Deductible which the Insured becomes legally obligated to pay as ***Damages for Claims***." (ECF No. 19-4 at p. 6).(emphasis added). As such, GenStar's obligation to indemnify Plaintiffs in the Underlying Action necessarily depends on whether a judgment in the Underlying Action could require Plaintiffs to pay "Damages," as that term is defined in the Policy, as the result of a covered "Claim," as that term is defined in the Policy.

The Policy defines "Claim" as "a written demand for monetary damages, including service of Suit or institution of arbitration proceedings by reason of a Wrongful Act." (ECF No. 19-4 at p. 11). Both the Keating Demand Letter and the Underlying Action qualify as a "Claim" within that definition.

The Policy defines "Damages" as "the monetary portion of any judgment, award or

settlement, provided always that Damages shall not include…[t]he amount of funds, money, securities or property that an Insured transferred or failed to transfer as a result of false, fraudulent or unauthorized instructions." (*Id.* at p. 11-12).

The Underlying Action seeks direct damages in the amount of $836,839.81, which represents the amount of allegedly unauthorized transferred funds. Plaintiffs argue that even if direct damages are excluded under the Policy, the Underlying Complaint seeks damages "in the amount of $836,839.81, *plus all lawful interest, attorney's fees, and costs of suit*." (ECF No. 1-2 at p. 5)(emphasis added). In Plaintiffs' view, the consequential damages, namely interest, attorney's fees, and costs of the suit, do not fall within the exclusion in the Policy's definition of "Damages," and therefore if awarded, could constitute covered damages sufficient to trigger GenStar's duty to defend.

Under New Jersey law, consequential damages may be covered under a professional services liability policy, even if direct damages are excluded, when the alleged consequential damages represent losses independent of the excluded direct damages. *See Hofing v. CNA Ins. Companies*, 588 A.2d 864, 869 (App. Div. 1991) (holding that consequential damages may be covered "if the [underlying] claim…is for damages over and above the [excluded damages].").[13] It follows then that if the consequential damages do not constitute losses "over and above" the excluded damages, but instead derive directly from them, those damages fall within the same exclusion and are not covered.

Here, the Underlying Action seeks direct damages in the exact amount that represents the

---

[13] In *Hofing*, the Appellate Division distinguished between the recoupment of legal fees, amounts that were expressly excluded under the policy, and additional losses allegedly caused by the attorneys' negligence. 588 A.2d at 869. The court explained that if the claimant sought payment for fees incurred to retain new counsel, review the file, or correct problems allegedly created by the insured attorneys, such costs could constitute consequential damages that were independent and "over and above" the excluded fees and therefore potentially fall within coverage. *Id.* Because the record did not clearly establish the precise nature of the damages sought, the court held that summary judgment was inappropriate as to that claim. *Id.*

10

allegedly unauthorized transfer of funds. These direct damages are clearly and unambiguously excluded under the Policy's definition of "Damages." The consequential damages that Plaintiffs contend are potentially covered, namely, "lawful interest, attorney's fees, and costs of suit," are not separate losses "over and above" the excluded damages within the meaning of *Hofing*. Rather, they are entirely derivative of the same alleged transfer of funds.

Moreover, the Underlying Complaint presents its demand for relief in a single sentence, seeking "$836,839.81, plus all lawful interest, attorney's fees, and costs of suit," thereby linking the consequential damages directly to the excluded direct damages. These additional amounts do not arise from an independent injury or separate theory of liability; they exist only by virtue of the claimed loss of the unauthorized transferred funds. Accordingly, because the alleged consequential damages derive directly from the excluded damages and do not constitute losses "over and above" them, they fall within the same exclusion and do not trigger coverage under the Policy. The Underlying Complaint does not seek any category of relief that would qualify as covered "Damages" independent of the excluded damages.

Plaintiffs' argument that a "Claim" triggers GenStar's duty to defend notwithstanding the definition of "Damages" ignores the express language in the Policy that defines the scope of coverage. It is well established that "[a]n insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled."" *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*, 307 A.3d 1174, 1184 (2024)(quoting *Flomerfelt*, 997 A.2d 991). Further, New Jersey courts enforce policy definitions as written, treating them as the controlling framework for determining coverage obligations. *See Cadre v. Proassurance Cas. Co.*, 2016 WL 3844208, at *5 (D.N.J. July 14, 2016)(analyzing the scope of coverage by applying the policy's definition of "claim," which was defined as "a demand or suit for damages received by the

Insured," alongside the policy's definition of "damages").

Plaintiffs devote significant effort to reframing the Policy's coverage structure in order to avoid the effect of its express language. They argue that coverage is triggered by the broad definition of a "Claim" rather than limited by the Policy's definition of "Damages." Further, they rely on the reporting provisions in Section V to emphasize the claim based nature of the Policy, and then seek to invoke principles of ambiguity and the doctrine of reasonable expectations to expand coverage beyond the Policy's text. In contrast, the Policy defines the scope of coverage in straightforward terms expressly stating that coverage applies only to "**Claims** against the **Insured** seeking **Damages** to which this insurance applies." Under settled New Jersey law, courts enforce clear and unambiguous policy language as written, and the interpretive doctrines Plaintiffs invoke do not override express contractual provisions.

In sum, although the Underlying Action constitutes a "Claim" under the Policy, coverage extends only to Claims seeking "Damages" to which the insurance applies. The Underlying Complaint seeks damages that represent the allegedly unauthorized transfer of funds, amounts expressly excluded from the Policy's definition of "Damages." The additional request for lawful interest, attorney's fees, and costs of suit does not alter that conclusion, as those amounts are wholly derivative of the excluded transfer and do not constitute independent losses "over and above" the excluded damages within the meaning of *Hofing*. The Underlying Complaint does not seek any category of relief that would qualify as covered "Damages" independent of the excluded damages. Because no portion of the relief sought qualifies as covered "Damages," the Underlying Action does not present any potentially covered theory of liability. Accordingly, GenStar owes neither a duty to indemnify nor a duty to defend Plaintiffs in connection with the Underlying Action.

### B.    Mishandling of Funds Exclusion

Defendants contend that the conduct alleged in the Underlying Action "falls squarely within the plain language" of  Exclusion I.[14] (ECF No. 19-1 at p. 13). Plaintiffs argue that Exclusion I does not clearly and unambiguously apply to all causes of action in the Underlying Complaint, that at least some claims are not "based upon" or "arising out of" an improper transfer of funds induced by unauthorized instructions, and that, at minimum, the presence of potentially covered theories triggers GenStar's duty to defend.

Exclusionary clauses in insurance polices are "presumptively valid and are enforced if they are "specific, plain, clear, prominent, and not contrary to public policy."" *Flomerfelt*, 997 A.2d 991, 996 (quoting *Princeton Ins. Co. v. Chunmuang,* 698 A.2d 9 (1997)). Further, "[i]f the words used in an exclusionary clause are clear and unambiguous, "a court should not engage in a strained construction to support the imposition of liability."" *Id*. (quoting *Longobardi v. Chubb Ins. Co.,* 582 A.2d 1257 (1990)). Exclusions are "ordinarily strictly construed against the insurer" *Aetna Ins. Co. v. Weiss,* 416 *A*.2d 426 (App.Div)., *certif. denied,* 425 A.2d 284 (1980), and when there are multiple potential interpretations of the language, courts "apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 997 A.2d 991, 997. However, "courts must be careful not to disregard the "clear import and intent" of a policy's exclusion, and we do not suggest that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." *Id*. (cleaned up). Instead, while using a "fair interpretation" of the exclusionary language, the court must determine if the exclusion is ambiguous. *Id*.

New Jersey does not rigidly adhere to a strict four-corners rule in evaluating the duty

---

[14] The exclusion at issue is found in the Policy at Section V (I). Defendant refers to this exclusion as the "Handling of Funds Exclusion." Plaintiffs refer to this as the "Section I Exclusion." For ease of reference, the Court will refer to this exclusion as Exclusion I.

defend. *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1272 (1992) (holding that "facts outside the complaint may trigger the duty to defend"). Courts may consider the nature of the claim and extrinsic facts bearing on coverage. *Id*. (reasoning that "[i]nsureds expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured."). The inquiry focuses on whether the underlying action presents any potentially covered theory of liability. If such a theory exists, the duty to defend is triggered; if all asserted theories fall within a policy exclusion, no duty arises.

Exclusion I states in relevant part:

> The Company has no obligation under this Policy to pay **Damages** or **Claims Expenses** or to provide a defense, in connection with any **Claim:**
>    I. based upon or arising out of:
>        4. any improper transfer, payment or delivery of funds, money, securities or property caused or induced by false, fraudulent or unauthorized instructions;

(ECF No. 19-4 at p. 9).

The phrase "arising out of" has generally been "read expansively to define the link between the conduct and the covered activity as 'originating from,' 'growing out of' or having a 'substantial nexus.'" *Id*. at 452. (cleaned up). In the context of exclusions, the phrase has been similarly read. *Id*. Notably, "[e]ach of those potential definitions includes a causal link between the excluded act and the injury, but none requires that the excluded act be the proximate cause of the injury." *Id*. at 454. As such, for Exclusion I to apply to this case, the causes of action in the Underlying Action must all allege a causal link between the excluded activity and the injury.

The Underlying Action includes three causes of action: 1) Legal Malpractice, 2) Breach of Fiduciary Duty, and 3) Common Law Fraud. (*See* ECF No. 1-2). In the Underlying Complaint, Count One alleges that K&A retained Plaintiffs to represent it in the potential purchase of Revel

14

Casino, which included transferring funds that were to be used exclusively for the casino purchase into a Trust. (ECF No. 1-2 at ¶¶ 5-8). Count one further alleges that the only authorized signor for the Trust was Jeff Keating and that Plaintiffs, without K&A's knowledge or authorization, under Sealey's direction, disbursed funds from the Trust to third parties for Sealey's benefit, thereby harming K&A. (*Id*. at ¶¶ 9-16). K&A alleges that the unauthorized transfers were a breach of Plaintiffs' professional duty. (*Id*. at ¶¶ 17-23).

Taken together, the allegations set forth under Count One substantively assert a causal link between K&A's injury and Plaintiffs' "improper transfer…of funds…caused…by unauthorized instructions."  As such, the allegations in Count One arise out of conduct that is excluded from coverage under the Policy. The injury alleged in Count One is the loss of the transferred funds themselves, and no independent injury separate from the transfer is pleaded. Because the allegations in Count One are grounded in that causal connection, GenStar would have no obligation to indemnify Plaintiffs for any judgment entered on that claim. It follows then that GenStar has no duty to defend Plaintiffs as to Count One.

Count two "repeats and alleges the allegations contained in all of the preceding paragraphs as if fully set forth herein," (*Id*. at ¶ 24), and further alleges that Plaintiffs "deliberately distributed money held in trust for [K&A] to third parties, without approval of [K&A]." (*Id*. at ¶ 26). Count three also "repeats and alleges the allegations contained in all of the preceding paragraphs as if fully set forth herein." (*Id*. at ¶ 30). It further alleges that Plaintiffs "knowingly and intentionally failed to disclose the distributions to third parties." (*Id*. at ¶ 31).

Because those counts incorporate by reference all allegations set forth in Count One, both counts rely on the same factual allegations concerning the allegedly unauthorized transfer of Trust funds, in addition to their own specific allegations. Thus, Counts Two and Three also assert that

15

Plaintiffs improperly transferred funds from K&A's Trust pursuant to Sealey's unauthorized instructions. As such, these allegations also assert a causal link between K&A's injury and Plaintiffs' "improper transfer…of funds…caused…by unauthorized instructions."

Although Counts Two and Three are styled as breach of fiduciary duty and common law fraud, respectively, each seeks recovery of the same $836,839.81 allegedly transferred from the Trust without authorization. The damages claimed in those counts arise from, and would not exist but for, the alleged improper transfer of funds. No separate theory of damages or independent injury is alleged. Unlike cases involving intervening or independent causes of loss, the gravamen of each count remains the transfer itself. For the reasons previously explained, Counts Two and Three likewise fall within Exclusion I and GenStar has no duty to indemnify nor defend Plaintiffs as to Counts Two and Three.

Even considering New Jersey's broad approach to the duty to defend, the result is the same. The plain language of Exclusion I bars coverage for any claim "based upon or arising out of" an improper transfer of funds caused or induced by unauthorized instructions." The Underlying Complaint, in each of its three counts, alleges that Plaintiffs transferred funds from K&A's Trust at the request of Sealey and without K&A's authorization, and that those transfers caused K&A's injury. Because each cause of action incorporates and relies upon those allegations, each asserts a causal nexus between the alleged injury and the improper transfer of funds induced by unauthorized instructions. Under New Jersey law, the phrase "arising out of" is interpreted broadly and requires only such a causal connection, not proximate cause. Accordingly, Exclusion I unambiguously applies to all counts of the Underlying Complaint.

As no potentially covered theory of liability remains, GenStar owes neither a duty to indemnify nor a duty to defend Plaintiffs in the Underlying Action.

### C.      Prior Knowledge Condition

GenStar also argues that coverage is barred under the Policy's prior knowledge provision, contending that Plaintiffs were aware, prior to the inception of the Policy, of facts or circumstances that could reasonably be expected to give rise to the Underlying Action. Plaintiffs dispute that contention and argue that GenStar applied an incorrect standard in evaluating prior knowledge.

The Court need not reach this issue. As set forth above, the Court has determined that the Underlying Action does not seek covered "Damages" under the Policy and, independently, that all causes of action fall within Exclusion I. Either ground is sufficient to conclude that GenStar owes neither a duty to indemnify nor a duty to defend Plaintiffs in connection with the Underlying Action.

Because the Court has determined that no potentially covered theory of liability exists under the Policy's insuring agreement and exclusions, any further analysis of the prior knowledge provision would not alter the outcome of this matter. Accordingly, the Court need not address the parties' prior knowledge arguments.

### D.      Breach of Contract and Breach of Fair Dealing

Plaintiffs assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 1-2 at 3–4). Because the Court has determined above that GenStar owed no duty to defend Plaintiffs in the Underlying Action, GenStar did not breach the Policy by declining to provide a defense.

Plaintiffs' bad-faith claim fails for the same reason. To establish bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Pickett v. Lloyd's*, 621 A.2d 445, 453 (1993) (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 376

(1978)). Thus, "[i]f a claim is 'fairly debatable,' no liability in tort will arise." *Id.* (quoting *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980)). Here, because GenStar is entitled to judgment as a matter of law on the coverage dispute, Plaintiffs cannot show that GenStar lacked a reasonable basis to deny a defense. Accordingly, Plaintiffs' bad-faith claim fails as a matter of law.

## V.     CONCLUSION

For all of the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 19) is **GRANTED**. Plaintiffs' Motion for Summary Judgment (ECF No. 18) is **DENIED**. An Order reflecting the same will follow.

Dated:   February 28, 2026

*Karen M. Williams*

KAREN M. WILLIAMS
United States District Judge